Staley v. Barhite.—Suckley v. Delafield.

and that the motion need not specify the reasons; because, as they are on the face of the record, they must necessarily appear to the adverse party.(a)

---

## STALEY *against* BARHITE AND WIFE.

If in *assumpsit,* by husband and wife, it be not shown why the wife is joined, it will be fatal on error. So if a jury be delivered in charge of a person not a constable.

Under a warranty against seizure, on account of illicit trade, the underwriter is liable for a loss by illicit trade barratrously carried on by the master. A representation, in time of peace, that a vessel shall sail in ballast, is substantially complied with, though she sail with a trunk of merchandize and ten barrels of gunpowder, laden on board without the knowledge of the owner.

ON a policy of insurance, upon the body of the ship Ann, effected on the following representation :

(a) Since the decision in the text, motions in arrest of judgment have been classed among enumerated motions, and are entitled to a preference to other causes on the calendar. Rule of Saturday 18th February, 1809.

"The Ann will sail from hence in a few days, for the West Indies, in ballast." The clause relating to contraband was stricken out, but that concerning illicit trade was retained.

In the first count of the declaration, the loss was alleged to have taken place by seizure, by the French government, in St. Domingo. In the second it was stated to have arisen from the barratry of the master. The circumstances, as they appeared at the trial, were these:

The vessel had neither invoice nor manifest of cargo, none having been shipped on board with the knowledge of the plaintiff, who was owner of the vessel. The master, however, had taken it on account of Grellet & Bell, of New York, a trunk of shoes, which he introduced into the ship as his own baggage; and, in addition to this, he privately conveyed into the Ann 10 barrels of gunpowder, which, with the assistance of the mate, he stowed under the ballast. Of the receipt on board of these articles, no entry whatsoever was made in the log-book. Thus circumstanced, the vessel sailed for St. Domingo, arrived there on the 26th of January, 1801; and, the agent of the plaintiff having discovered the shipment of the shoes and gunpowder, she was, together with these articles, duly entered at the custom-house, at Cape Françoise; but General Le Clerc having arrived there on the 4th of February following, it became necessary to make a new entry, which was accordingly done. Soon after this, the vessel was seized by his directions, and confiscated for importing powder, contrary to the third article of the *arret* of the 16th of February. The judge charged, that the captain's conduct, in secretly taking on board the powder, without the knowledge of the owner, was barratry; and, although the trunk of shoes was on board, yet that did not to him appear to have increased the risk of the voyage, nor was it a material circumstance. On this, the jury found a verdict for a total loss; to set aside which, and grant a new trial, the defendant now applied on the following grounds: 1.

Because the representation that the ship would sail in ballast was material and not true; 2. That the condemnation was for illicit trade; the warranty, therefore, in that respect, broken; 3. *That the act of the agent [*223] of the owners, entering the powder, was, in law, the act of the plaintiff.

*Pendleton*, for the defendant. The representation of the state in which the vessel was to sail, we consider as material. Independent of the powder, which might be considered as within the representation, there was some cargo on board. It is for the court to determine whether its amount is to be taken into consideration, and this will depend upon the idea they will entertain of the meaning of the terms, sailing in ballast. The object was to show there would be no danger of capture or detention from having a cargo on board, and to induce a calculation of the premium, on the principle that there would be nothing on board to tempt a cruiser, to seize. It does not appear that the trunk was shipped for the benefit of the master. This, therefore, cannot be barratry. On the second point there can be no doubt; for, allowing the insurer to be liable for barratry, it must be barratry in something not within that which he is warranted against. It is plain the condemnation was for illicit trade. On this point the sentence is conclusive evidence, because pronounced by a competent tribunal, on a matter of municipal law. This is very different from admiralty sentences, deciding on the law of nations. . Here there was a condemnation for barratry in an illicit trade, from loss in which very trade the insurer is warranted free. The third point needs no argument. The act of an agent, respecting the subject matter of his agency, is clearly the act of his principal. The entry, therefore, of the vessel was an adoption of the captain's conduct in carrying out the gunpowder.[1]

[1] See *Ely* v. *Hallett*, *ante*, and cases cited there.

---
Suckley v. Delafield.
---

*Hoffman*, contra, was stopped by the court.

KENT, Ch. J. We are of opinion the representation of sailing in ballast, was merely stating the vessel would not be exposed to the sea perils attending a loaded ship. It was made in a time of profound peace, and, in the present instance, was substantially performed. We have no doubt on the conduct of the master. It was certainly barratry, and the plaintiff must have judgment.(*a*)

New trial denied.

(*a*) Where contraband of war and lawful goods are shipped in the same bottom, with the knowledge of the assurer and assured, the warranty against illicit trade, &c., in a policy on the lawful goods, will apply only to the goods insured. *Brown* v. *Show*, 1 Caines' Rep. 489. To constitute a breach of the warranty in this clause, a condemnation on pretence of illicit trade, &c., is not enough : there must, it would seem, be a trading in fact, (*Johnston* v. *Weir & Ludlow*, 1 Caines' Ca. in Er. xxix. S. C., confirmed by 2 Johns. Ca. 481, giving the sentence of the court of admiralty at full length, the decision in error *verbatim* as in Caines',) and that followed by a seizure ; (*Graham* v. *Penn. Ins. Co.*, 1 Cond. Mar. 346, a. (*n*) therefore a loss by seizure only, in a port of necessity, after being refused entry at that of destination, is not a loss within the warranty, (*Suydam & Wyckoff* v. *Mar. Ins. Co.*, 1 Johns. Rep. 181,) nor a capture under the Berlin decree for touching at a port in England. *Mumford* v. *Phœnix Ins. Co.*, 7 Johns. Rep. 449. But from a loss by any trading actually illicit, though innocently carried on, the underwriter is exonerated. As where a vessel commenced her loading under a permission by proclamation to take in a cargo not allowed to be exported or received otherwise, but was taken and condemned in consequence of continuing to lade and sailing after promulgation of an order revoking the license, the underwriter was held to be discharged, notwithstanding the lading and sailing were under a mistaken opinion of the commander-in-chief at the port of departure, that the trade was lawful. *Tucker* v. *Juhel*, 1 Johns. Rep. 20. In a policy on *commissions* on lawful goods, containing the above warranty, it will apply only to those lawful goods upon which the commissions are to arise, though the insurer know not of contraband of war being on board, and the assured be assignee of the contraband articles. *De Peyster & Charlton* v. *Gardner*, 1 Caines' Rep. 492.